IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Thomasina Singleton, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Greenville Housing Authority, ) <br> and Ullyses Sweeney, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 6:09-2104-JMC-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the motion of The Housing Authority of the City of Greenville ("GHA") for summary judgment (doc. 53). The plaintiff, who is proceeding *pro se*, alleges in her complaint that she was employed by GHA for several months in 2008 and that during such time she was subject to a hostile work environment in the form of sexual harassment by her supervisor (defendant Ullyses Sweeney), by several other GHA employees, and by several unnamed GHA residents in violation of Title VII of the Civil Rights Act of 1964, as amended.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On May 6, 2010, defendant GHA filed a motion for summary judgment. By order of this court filed that same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to respond adequately. The plaintiff filed her response on June 9, 2010.

# FACTS PRESENTED

Defendant GHA is a governmental entity created by the Housing Authorities Law of the State of South Carolina. *See* S.C. Code Ann. §§ 31-3-10 *et seq*. In January 2008, GHA entered a Host-Agency Agreement with the American Association of Retired Persons ("AARP") Foundation (def. m.s.j., ex. 1, Teresa Futrell aff., att. 1). The AARP Foundation administered a program entitled Senior Community Service Employment Program ("SCSEP"), which is a grant program funded by the United States Department of Labor designed to provide temporary income to economically disadvantaged and financially eligible individuals 55 years of age and older while in a work/training assignment (*id.*, ex. 1, atts. 1, 2). The goal of SCSEP is to provide useful, part-time temporary community service to host agencies, which in turn is designed to assist enrollees with updating and/or developing the skills they need to obtain "unsubsidized" jobs in their community (*id.*). Through the Host-Agency Agreement, GHA requested the services of participants from the AARP Foundation SCSEP (*id.*). The Agreement provides in pertinent part:

> The Senior Community Service Employment Program (SCSEP) is a short term, work-training program to prepare participants for unsubsidized employment off of the program. The program is not an entitlement, nor is it designed to provide income maintenance. SCSEP participants are considered to be in training status, preparing to accept unsubsidized employment. They, and you as the host agency supervisor, must understand and accept that training with the host agency is a short-term training opportunity, NOT a job, and that participants are NOT employees of either the AARP Foundation or the host agency to which they are temporarily assigned. AARP Foundation SCSEP does not conduct background checks or drug screenings on any participants. Host Agencies are permitted to conduct background checks or drug screenings on any participants. Host Agencies are permitted to conduct background checks and drug screenings for participants assigned to their organization. AARP Foundation SCSEP is not financially responsible for any costs involved in any background checks or drug screening.

(*Id.*, ex. 1, att. 1, ¶ 3).

2

Participants' workers compensation costs are paid for by the AARP Foundation (*id.*, ex. 1, atts. 2-5). In addition, all payments to participants are paid by the AARP Foundation. Further, the AARP Foundation completes a Federal I-9 Form and W-4 Form for all participants. A participant's time at the host agency is set by the AARP Foundation, and holidays are designated by the AARP Foundation (*id.*). The plaintiff received no compensation or benefits of any kind from defendant GHA (*id.*, ex. 1). In addition, the AARP Foundation issues to each participant and host agency a Handbook that outlines the program (*id.*, ex. 1, att. 2). The AARP Foundation Handbook is 32 pages long and contains numerous policies. Specifically, the Handbook states:

> **Very Important Information About Assignments and Transfers**
> 1. An assignment must not be confused with a permanent job. A permanent job, or "placement', occurs when Participants are paid by an employer and no longer subsidized by the AARP Foundation SCSEP.

(*Id.*, ex. 1, att. 2 at p. 20). The Handbook also includes policies regarding drugs in the workplace, weapons in the workplace, disciplinary procedures, a grievance procedure, an outline of paid holidays, jury duty, physical examinations, political activity, etc. (*id.*).

The plaintiff was an enrollee/participant in the AARP Foundation's SCSEP (*see* comp.). On or about March 10, 2008, the plaintiff voluntarily completed an "Application for SCSEP Services" with the AARP Foundation (def. m.s.j., ex. 1, att. 3). The introductory paragraph on the plaintiff's application states as follows:

> The SCSEP is <u>not</u> an entitlement or income maintenance program and the assignments Participants have while enrolled in the program are not "jobs." SCSEP enrollee's main goal is finding and accepting unsubsidized employment….The SCSEP is designed to provide job training and job search assistance to individuals ages 55 and older with limited income. If enrolled, during your months on the program you will be assigned to temporary work/training assignments for which you will be paid for training to offset costs of looking for permanent, unsubsidized employment.

(*Id.* (emphasis in original)). Later in the application, a paragraph initialed by the plaintiff states in pertinent part, "I acknowledge that training with the Host Agency is NOT a job and if I am enrolled I am not an employee of either the AARP Foundation or the Host Agency to which I am assigned" (*id.* ¶ 3).

The plaintiff was assigned to temporary subsidized training pursuant to the SCSEP with defendant GHA as a Host Agency between the dates of March 24, 2008 and September 3, 2008 (*id.*, ex. 1, Futrell aff. ¶¶ 6-8). During only a portion of that period (July 7 to September 3), her Host Supervisor was defendant Ullyses Sweeney (*id.*). At that time, Mr. Sweeney was a Property Manager III for GHA (*id.*). During the plaintiff's time at GHA, she performed filing, answered the telephone, made folders and performed other general office tasks (*id.*).

In her complaint, the plaintiff alleges that she was subject to sexual harassment as a result of the following conduct on the specific dates noted:

> 1) 03/24/08 – Ms. Teresa Futrell poked her tongue out at me while we were having a conversation.
>
> 2) 04/08 – As I entered the office Ms. Futrell stood in the entrance way of the office as I walked in she stated, "we are not having no junk in this office."
>
> 3) 04/14/08 – Ullyses Sweeney came in the office with his pants hanging, showing his underwear, then brushed papers off my desk on the floor.
>
> 4) 05/27/08 – Mr. Ullyses Sweeney came in the front office as he made sexual gesture asked "Do you want me to give you CPR." I was not in need of any health care assistance.
>
> 5) 05/28/08 – Tenant walked towards me with his pants unzipped….
>
> 6) 05/08 – Mr. Sweeney entered the office stating there are spots on the 1st floor. It look like shit. We will clean that shit up.

4

> 7) 07/10/08 – Tenant came in office as he left "he said, give me a kiss". Mr. Sweeney had left the office. Upon his return he asked me, "As he pulled up his pants "Are you having fun yet."
>
> 8) 07/11/08 – I was away from my desk. When I returned I found my purse opened and my stuff scattered about not in the manner in which I left it….
>
> 9) 08/08/08 – Cindy Gwinn came in the office saying someone in the building has shit up the f---ing bathroom. She should leave.
>
> 10) 08/08/08 – David Lewis enters the office looking at me at directed obscene comment f--- word.
>
> 11) 08/19/08 – Again, Mr. Sweeney asked me if I wanted him to give me CPR. Again, I was in no need health care....
>
> 12) 08/21/08 – I asked Mr. Sweeney did he have any work. He stated "He will find something." And commented on my personal appearance stating, "and you have on lipstick." During the time I was working in this I was assigned to file in Mr. Sweeney's office. In the file cabinet he kept a pair of men's underwear.

(Pl. comp., att. doc. 16).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the

5

disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Title VII prohibits employers from discriminating in hiring, firing, and employment terms. 42 U.S.C. § 2000e-2(a). A defendant must be an employer within the definition of Title VII as a jurisdictional prerequisite to the maintenance of a Title VII action. *See Harris v. Palmetto Tile, Inc.*, 835 F.Supp. 263, 266 (D.S.C. 1993). Specifically, only an

6

"employer" of an "employee" can be liable under Title VII for discrimination or harassment. A defendant may be held liable under Title VII if it (1) fits within the "employer" definition of Title VII, and (2) "exercises substantial control over significant aspects of the compensation, terms, conditions, or privileges of Plaintiff's employment." *Magnuson v. Peak Tech. Servs., Inc.*, 808 F.Supp. 500, 507 (E.D. Va. 1992) (citing *Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 611 F.Supp. 344, 349 (S.D. N.Y. 1994)). An employer under Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees," 42 U.S.C. § 2000e(b). An "employee" is defined as "an individual employed by an employer." *Id.* § 2000e(f).

In *Farlow v. Wachovia Bank of North Carolina*, 2595 F.3d 309 (4th Cir. 2001) the Fourth Circuit outlined the test for determining whether an employee-employer relationship exists for purposes of federal anti-discrimination laws:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (citations and footnotes omitted). We recently applied these factors in *Cilecek* and added that the parties' beliefs regarding the nature of the employment relationship are significant. *See* 115 F.3d at 259-63.

*Farlow*, 259 F.3d at 313.

Here, the evidence overwhelmingly shows that GHA was *not* the plaintiff's employer for purposes of Title VII. The plaintiff has produced no evidence to the contrary.

7

The terms of the Host Agency Agreement between GHA and the AARP Foundation, the plaintiff's Application for SCSEP Services, and the AARP Foundation's Handbook cannot be any more clear concerning the party's intentions about the nature of the plaintiff's status with GHA. All of these documents state that plaintiff, as an enrollee in the SCSEP, was on a temporary training assignment with GHA as a Host Agency. Further, the plaintiff was in no way treated as an employee of GHA. There was no job at GHA for which the plaintiff applied, and she did not receive an offer of employment. GHA did not set any hours for the plaintiff. GHA set no wage rate for the plaintiff, and GHA completed no normal pre-employment forms (e.g., I-9 Form or W-4 Form) for the plaintiff. She was provided absolutely no compensation of any type by GHA, and she received no benefits from GHA. Accordingly, not only did the parties consider their relationship not to be that of employer and employee, but they did not treat the relationship as an employment relationship. Based upon the foregoing, defendant GHA is entitled to summary judgment on the plaintiff's Title VII harassment claim as the plaintiff was not its employee.

Furthermore, even if the plaintiff was to be considered an employee of GHA for purposes of her Title VII claim, the conduct she alleges does not rise to the level of an actionable claim for sexual harassment. To establish a claim of unlawful harassment based upon her gender, the plaintiff must establish the following four elements: (1) unwelcome conduct, (2) based on her gender, (3) sufficiently severe and pervasive to alter the terms and conditions of his employment, and (4) some basis to impute liability to the defendant. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241 (4th Cir. 2000). To survive summary judgment, the plaintiff must demonstrate that the "workplace is permeated with discrimination, intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of employment and create an abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). The second element of a claim of sexual harassment requires proof that the plaintiff would not have suffered the harassment

8

"but for" her gender. *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007). With respect to the third element, Title VII does not protect employees from every instance of unpleasantness in the workplace. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 183 (4th Cir. 1998). The Fourth Circuit has acknowledged that Title VII does not attempt to "'purge the workplace of vulgarity.'" *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995)). In determining whether allegations of harassment are severe and pervasive to fit within Title VII's parameters, the court "must examine the totality of the circumstances, including '[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

Here, as argued by defendant GHA, while the comments made in the plaintiff's presence may have been offensive and uncouth, they are not sufficiently severe or pervasive to create an abusive work environment. Similarly, in *Hopkins*, the Fourth Circuit Court of Appeals affirmed the grant of summary judgment because the incidents alleged by the plaintiff did not create a hostile working environment. In that case, the male plaintiff asserted a claim based upon several sexual overtures by his male supervisor. The incidents complained of by the plaintiff included allegations that his supervisor bumped into him and stared at him. The plaintiff also presented evidence of several incidents where the supervisor made illicit comments about the plaintiff's genitalia. Additionally, the plaintiff alleged that his supervisor made comments around other employees to suggest that he and the plaintiff were romantically involved. The plaintiff even presented evidence that his supervisor tried to kiss him when he was shaking hands with his guests at his wedding. *Id.*

In addressing whether the alleged conduct was sufficiently severe to create an abusive environment, the court noted that most of the conduct complained of by the plaintiff was limited to ambiguous sexual innuendos. The court noted that the record was

9

devoid of any allegations of overt sexual propositions. Additionally, the court noted that the plaintiff did not allege that his supervisor ever touched him in a sexual manner. Although the incidents were tasteless and inappropriate, the court concluded that as a matter of law the incidents were insufficient to "interfere with a reasonable person's work performance to the extent required by Title VII." *Id.* at 753-754.

The Fourth Circuit Court of Appeals has granted summary judgment despite acknowledging allegations, including the following, regarding a male co-worker who acted at times as the plaintiff's supervisor:

- telling the plaintiff's supervisor in her presence that she should be "spanked every day," in response to which her supervisor laughed and agreed;

- constantly staring at her breasts and telling her how attractive she was; and

- installing a security camera pointed at her desk so that he could watch her.

*Singleton v. Dept. of Correctional Educ.*, No. 03-2160, 2004 WL 2603642, at *1 (4th Cir. 2004). The offending conduct occurred approximately four times per week for over a year. The court concluded the behavior was not sufficiently severe and pervasive as to alter the conditions of her employment. *Id.* at *3.

Based upon the foregoing, summary judgment is appropriate even if the plaintiff is considered to be an employee of defendant GHA under Title VII.

The plaintiff also alleges a sexual harassment claim against her Host Agency Supervisor, Ullyses Sweeney. While this defendant, who is proceeding *pro se*, has not filed a dispositive motion, this court has considered the claim against him *sua sponte*[1] and finds that the claim should be dismissed for failure to state a claim. "As set forth in

---

[1] *Sua sponte* is a Latin phrase meaning "Without prompting or suggestion; on its own motion." *Blacks Law Dictionary* (8th ed. 2004).

10

5 C. Wright and A. Miller, Federal Practice and Procedure § 1357 (1973): 'Even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim.'" *Jensen v. Conrad*, 570 F.Supp. 91, 100 (D.S.C. 1983).

> Where the face of a complaint plainly fails to state a claim for relief, a district court has "no discretion" but to dismiss it. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990); *see also Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir.1959) (observing that a motion to dismiss for failure to state claim "allows of no discretion in the usual sense" because "a complaint is either good or not good").

*Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006). "[S]upervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Souther Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Accordingly, the plaintiff's allegations against Mr. Sweeney fail to state a claim and should be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendant GHA's motion for summary judgment (doc. 53) should be granted. Further, this court recommends *sua sponte* that the complaint against the remaining defendant, Mr. Sweeney, be dismissed.

s/Kevin F. McDonald<br>
United States Magistrate Judge

September 21, 2010
Greenville, South Carolina

11